IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF COLIN FITZPATRICK,<br>            Plaintiff,<br><br>     v.<br><br>UNIVERSAL TECHNICAL<br>INSTITUTE,<br>            Defendant. | Civil Action No. 08-1137 |

MEMORANDUM ORDER

Plaintiff Estate of Colin Fitzpatrick is suing defendant Universal Technical Institute ("UTI") for its alleged role in causing an automobile accident that took the life of Colin Fitzpatrick on January 30, 2006. Defendant has filed a motion to dismiss the complaint (Docket No. 12) for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). That motion is now ripe for disposition.

According to the complaint, Fitzpatrick was killed when an automobile driven by Jean DeFauge "sped into the intersection of Route 202 and Old Wilmington Pike" and struck Fitzpatrick's car. Compl. at ¶ 18. Jean DeFague is alleged to have been a student at UTI at the time of the accident. *Id.* at ¶ 9. According to the complaint, UTI was aware that its students, including DeFague, were using the knowledge imparted in UTI classes and UTI facilities to alter their automobiles so that they would perform at higher speeds.

-1-

*Id.* at ¶ 10.  Plaintiff further alleges that UTI was aware that its students were in the habit of driving recklessly in areas near campus, and had enacted a policy of dismissing students seen exhibiting this behavior.  *Id.* at ¶¶ 11-13.  It is alleged that UTI's failure to properly police its students was negligent and was a proximate cause of the accident.  *Id.* at ¶¶ 23 & 24.

Defendant argues that the facts pleaded are insufficient to support the existence of a duty running from UTI to plaintiff.  The Pennsylvania Supreme Court has held that "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."  *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000).  The court further observed that "the legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society."  *Id.* at 1169.  To determine whether a duty exists, a court must "weigh[] . . . several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."  *Id.*

UTI argues, based primarily on *Alumni Association v. Sullivan*, 572 A.2d 1209, 1213 (Pa. 1990), *Booker v. Lehigh University*, 800 F. Supp. 234 (E.D. Pa. 1992), *aff'd* 995 F.2d 215 (3d Cir. 1993) (table), *Millard v. Osborne*, 611 A.2d 715, 720-21 (Pa.

Super. Ct. 1992), and *Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979), that a tertiary institution has no duty to prevent its students from harming others, even if the harm is foreseeable. In the court's view, defendant overstates the holdings of those cases.

In *Sullivan*, the Pennsylvania Supreme Court held that a college did not have a duty to prevent the harm to a third party that resulted from a student becoming intoxicated at an off-campus party, despite the college's alleged knowledge that parties involving underage students drinking alcohol took place regularly. Critical to the court's holding were (1) that the college did not own the property on which the alcohol was consumed and (2) that the college's agents were not alleged to have been involved in the planning or execution of the party. 572 A2d. at 1211. In effect, all that was alleged was the existence of a college-student relationship, which the court held insufficient, standing alone, to impose on the college a general duty to prevent its student from harming third parties. *Id.* at 1213.

Similarly, in *Bradshaw*, the Third Circuit held that a college could not be held liable for the injuries caused when a student became intoxicated at an off-campus event, undertook to drive himself and another student back to campus, and got into a serious car accident. Specifically, the court held that the college had no duty to protect the passenger student from the driver student's dangerous behavior. 612 F.2d at 142.[1]

---

[1] It seems to the court that *Booker* and *Millard* are of substantially less use to defendant because both address whether a college is liable when a student of the college harms *himself* in a foreseeable manner (in both cases, by driving while intoxicated). *See Millard*, 611 A.2d at 715-16; *Booker*, 800 F. Supp. at 241. Neither case addresses liability to a third party harmed by the

It should be noted that the *Sullivan* and *Bradshaw* courts relied, in large part, on Pennsylvania's version of the social-host doctrine, which provides that a social host is not generally liable for harm caused by an intoxicated social guest, even if the host provided the guest alcohol when he was visibly intoxicated. *See Sullivan*, 572 A.2d at 1211; *Bradshaw*, 612 F.2d at 141. An exception to the social-host doctrine is that a host can be held liable for the harm caused by an underage intoxicated guest, if the host knowingly supplied the underage guest with alcohol. *See Sullivan*, 572 A.2d at 1212-13. Here, because this case bears little connection to the social-host doctrine and the policies vindicated by that set of rules, the court is wary of reading *Sullivan* and *Bradshaw* too broadly at this early stage of the litigation.

While *Sullivan* and *Bradshaw* seem to establish that there is no general duty running from a college to third parties harmed by the college's students, they do not, in the court's view, establish that such a duty can never exist. Rather, they counsel that the mere fact of a college-student relationship is not enough to establish a duty of care running from the college to third parties harmed by its students. They do not speak to whether such a duty can be established if it is alleged and eventually proved that the college bore some additional proximity to the situation. Here, for example, it is alleged that students, with the knowledge of UTI, used UTI facilities improperly to modify their automobiles to enhance their speed and render them dangerous. Under Pennsylvania law,

---

student's conduct.

there is a general duty to police the use of one's property, if one has reason to expect that a person will use that property in a manner likely to cause injury to others. *Glass v. Freeman*, 240 A.2d 825, 829 (Pa. 1968) ("It is established in Pennsylvania that a possessor of land who permits a third person to conduct an activity on the land has a duty to exercise reasonable care to prevent that third person from creating an unreasonable risk of bodily harm to others, if the possessor knows or has reason to know that he has the ability to control the third person and that there is a need and opportunity to exercise control."); *see also* Restatement (Second) of Torts § 318 (1965).  Thus, should there be evidence that the university was or should have been aware that its facilities were being used by its students for improper modifications of student automobiles that would reasonably create a danger to others, and should there be evidence that such an improper modification was a factual cause of the accident at issue, then, depending on the content of that evidence, it is possible that a finding of liability would be consistent with Pennsylvania law.[2]

---

[2] Defendant notes that plaintiff did not specifically allege that an improper modification was involved in this accident.  It is the court's view that in our notice pleading regime, plaintiff's complaint did not need to reach that level of detail.  Plaintiff alleged a variety of facts regarding UTI's relationship DeFague, and then alleged a duty, a breach of duty, and a causal link.  This is sufficient to constitute an allegation that UTI's alleged bad acts caused the accident.
    Defendant also claims that DeFague was only driving 87 miles per hour at the time of the accident—an unsafe speed, but one achievable without any improper modification of a typical automobile.  Thus, according to UTI, plaintiff cannot establish that any improper modification caused the accident.  Defendant may be correct, but the court is not in a position to consider a defense allegation at this stage, so defendant will have to save this alleged fact for summary judgment practice.

Because plaintiff has alleged something more than the mere existence of a college-student relationship between UTI and DeFauge, plaintiff has properly pleaded a complaint that raises its right to relief above the speculative level, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), so the motion to dismiss will be denied. None of this, of course, is to say that plaintiff has established the existence of a duty running from defendant to Fitzpatrick; it is only to say that plaintiff has properly alleged facts that make the existence of such a duty plausible. Whether plaintiff can produce evidence supporting the existence of such a duty and supporting plaintiff's theory of causation are questions to be addressed following discovery.

\* \* \* \* \*

AND NOW, this 14th day of August, 2008, for the foregoing reasons, plaintff's motion to file a sur-reply brief (Docket No. 20) is GRANTED, and defendant's motion to dismiss (Docket No. 12) is DENIED.

BY THE COURT:

/s/ Louis H. Pollak
_____
Pollak, J.