IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GALE FITZPATRICK and THE
ESTATE OF COLIN FITZPATRICK,
                              Plaintiffs,

v.

UNIVERSAL TECHNICAL
INSTITUTE, INC.
                              Defendant.

Civil Action No. 08-1137

MEMORANDUM

August 13, 2009                                              Pollak, J.

Defendant Universal Technical Institute ("UTI"), a Delaware corporation that operates technical training schools, has filed a Motion to Dismiss (docket no. 34) the amended complaint (docket nos. 10, 33) filed by plaintiffs in this diversity suit.  Plaintiffs Gail Fitzpatrick, mother of decedent Colin Fitzgerald, and the Estate of Colin Fitzpatrick have responded (docket no. 36).  Defendant, without requesting the court's permission, has filed a reply (docket no. 37).  *See* Local Rule 7.1(c); *King v. Twp. of East Lampeter*, 17 F. Supp.2d 394, 406 (E.D. Pa. 1998).  Plaintiffs have filed a sur-reply (docket no. 38) after requesting leave to do so.

## I.  Background and Procedural History

In addressing a motion to dismiss, the court assumes the truth of the complaint's

1.

factual recitals:

Plaintiff Gale Fitzpatrick is the mother of Colin Fitzpatrick and serves as administratrix of his estate, which is also a plaintiff (together, hereafter, "plaintiff").  Am. Compl. ¶¶ 1-3.  On January 30, 2006, Colin Fitzpatrick was driving home on Route 202 near West Chester, PA when he was struck and killed by a car driven by Jean DeFague. *Id*. ¶ 17-21.  At the time of the collision, DeFague was a student at the Exton, PA campus of UTI, located about ten miles from the accident site.  *Id*. ¶ 9.

UTI operates training schools where students can learn, *inter alia*, automotive maintenance and repair.  Plaintiff alleges that UTI was aware that its students were driving recklessly and "at extreme speeds" in the area around the Exton campus of UTI. *Id*. ¶ 11.  UTI had received many complaints from area residents and allegedly "instructed the student body that this type of conduct would not [be] permitted."  *Id*. ¶ 12.  UTI also maintained "a policy requiring students to abide by all traffic laws," the violation of which could result in student expulsion.  *Id*. at 13.  Finally, plaintiff contends that "UTI was aware that Jean Paul DeFague, and possibly other students, were engaging in negligent and/or reckless behavior in violation of UTI's policies" but failed to take any measures to enforce its policies and prevent violations.  *Id*. at 21.

Plaintiff filed a complaint in the Chester County Court of Common Pleas seeking damages from UTI for negligence, wrongful death, and survival.  Invoking this court's diversity jurisdiction, UTI removed the suit to the Eastern District of Pennsylvania.

2.

Shortly thereafter, UTI filed a motion to dismiss (docket no. 12) under Fed. R. Civ. P.

12(b)(6), contending that plaintiff could not establish that UTI owed a duty in this case.  I

denied the motion (docket no. 21) for reasons recounted *infra*.  Plaintiff then amended her

complaint (docket no. 33), and UTI filed the instant motion.

**II. Analysis**

A.      Rule 12(b)(6) motion to dismiss

        Defendant moves the court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss

plaintiff's amended complaint with prejudice on grounds that it fails to state a claim upon

which relief can be granted.  In reviewing this motion, the court must accept as true all

factual allegations in the complaint and draw all reasonable factual inferences, construing

them in the light most favorable to the plaintiff.  *Rocks v. City of Phila.*, 868 F.2d 644,

645 (3d Cir. 1989).  Dismissal under 12(b)(6) is unwarranted if "under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  *Pinker v. Roche*

*Holdings, Inc.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

        UTI contends that, on the current pleadings, plaintiff cannot establish that UTI

owed a duty to protect Fitzpatrick or a duty to control the UTI student who caused the

accident.  Plaintiff responds that "UTI assumed a duty through its affirmative conduct,

such as when it undertook instruction and enacted policies that were designed to prevent

its students from violating traffic laws and causing harm to the public."  Pl. Resp. at 4.

Plaintiff further contends that "Fitzpatrick's allegations that UTI owed Colin Fitzpatrick a

duty of care are founded on established Pennsylvania tort law relating to the voluntary assumption of a duty created by affirmative conduct[,]" and that "the question of duty cannot be definitively answered without discovery." *Id*. at 5, 7.

The Commonwealth Court of Pennsylvania has determined that "a college has a vital interest in the character of its students, and may regard off-campus behavior as a reflection of a student's character and his fitness to be a member of the student body." *Kusnir v. Leach*, 439 A.2d 223, 226 (Pa. Commw. Ct. 1982) (reviewing a suspension decision by a state college). The authority to sanction a student on-campus for inappropriate conduct off-campus does not presuppose, however, let alone create, a duty to supervise students in the wider world or to protect the broader citizenry from them. "College administrators no longer control the broad arena of general morals." *Bradshaw v. Rawlings*, 612 F.2d 135, 140 (3d Cir. 1979). "A college regulation that essentially tracks a state law and prohibits conduct that ... is already prohibited by state law does not, in our view, indicate that the college voluntarily assumed a custodial relationship with its students ...." *Id*. at 141. From this starting point, I will examine whether UTI could have owed a duty to Fitzpatrick under any reading of the facts pleaded here.

"The primary element in any negligence cause of action is that the defendant owed a duty of care to the plaintiff." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000). Observing that "the legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of

history, morals, justice and society[,]" *id.* at 1169, the Supreme Court of Pennsylvania has

set out the following factors for review when determining whether a duty exists:

> (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Id*. Whether a college or university assumes a duty to the public when it "[undertakes]

instruction and [enacts] policies that were designed to prevent its students from violating

traffic laws and causing harm to the public" (Pl. Resp. at 4) appears to be a question of

first impression in Pennsylvania.

Courts in other jurisdictions, however, have addressed similar questions in recent

years. For purposes of the instant review, the most cogent among them is *Collette v.*

*Tolleson Unified Sch. Dist.*, 54 P.3d 828 (Ariz. Ct. App. 2002). In *Collette*, a group of

injured motorists sued a public school district after their car was struck by a high school

student who, in violation of school policy, left campus during the lunch hour and drove

recklessly. *Id*. at 830-31. The plaintiffs asserted that the school district owed, or

voluntarily assumed through the enactment of its campus policies, a duty to protect the

general public from reckless driving by students. *Id*. at 832, 835. The Arizona Court of

Appeals affirmed the trial court and held that no duty existed under such circumstances.

*Id.* at 833 ("We do not believe reasonable persons would agree that such a duty exists,

and decline to impose such a duty in this case for both practical and policy reasons"). *See*

*also Kazanjian v. Sch. Bd. of Palm Beach County*, 967 So.2d 259, 266 (Fla. Dist. Ct. App.

2007) ("school rules relating to a student's presence on campus do not impose a legal duty of care running from the school board to third parties who are injured as a result of the negligent driving conduct of a student who has violated the school's policies"); *Thompson v. Ange*, 443 N.Y.S.2d 918, 921 (N.Y. App. Div. 1981) ("The schools' awareness of reckless driving by some students and their concern for student safety is not sufficient to show that [the driver] was anything but the average 17-year old whom the Legislature has determined may be licensed to drive....").

The Court of Appeals of Arizona, in *Collette*, offers some useful discussion of the factors underlying its decision that an educational institution does not take on a duty to protect the public by maintaining policies of this kind:

> As a practical matter, we see no benefit in imposing a duty upon a school district concerning the conduct of students over which it has no control. The District has no power or authority to decide which students are authorized to operate motor vehicles on public highways. Nor does it have the power to prevent, revoke, or restrict a student's off-campus driving privileges, or even to prevent a student from choosing to drive without a license. The most the District can do is to impose discipline upon a student for the violation of school rules involving motor vehicles in and around campus or prohibit a student from driving a motor vehicle onto the school campus.
>
> The ability to impose discipline after the fact is significantly different from the power to control a student's conduct before the fact. Once a student removes himself from school grounds, with or without permission, his decision to drive is outside the supervisory power of school officials....
>
> Moreover, appellants' argument proposes an unreasonable duty on schools with potentially broad ramifications.... School districts might thereby be called upon to defend their student supervision policies and actions in a variety of other contexts and settings.... We do not believe a school district should be under a duty to anticipate and protect against such eventualities.

54 P.3d at 833.

These policy considerations appear even weightier in the context of tertiary, vocational, or professional education where adults (or young people of age eighteen and above) comprise the vast majority of the student population and the institutions enjoy less supervisory authority over students than secondary schools wield. *Cf. Millard v. Osborne*, 611 A.2d 715, 721 (Pa. Super. Ct. 1992) (noting that "[a] college may not 'control' the behavior of its students as may have been possible in the past."). The *Collette* discussion also logically aligns with the Third Circuit's conclusion in *Bradshaw v. Rawlings* (a case where a college student injured others in an automobile after an off-campus event that involved drinking) that a duty does not arise when a college officially admonishes students to stay within the boundaries of state law and provides for institution-level sanctions for violations. 612 F.2d at 141.

Citing *Pirocchi v. Liberty Mut. Ins. Co.*, 365 F. Supp. 277, 281 (E.D. Pa. 1973), plaintiff argues that the duty in this case is "founded on established Pennsylvania tort law relating to the voluntary assumption of a duty created by affirmative conduct." The facts of *Pirocchi* concerned spoliation of evidence central to a tort claim, *id.* at 279, and plaintiff points to the court's observation that "a person who makes an engagement, even though gratuitous, and actually enters upon its performance, will incur tort liability if his negligence thereafter causes another to suffer damages." *Id.* at 281; *see also Cantwell v. Allegheny County*, 483 A.2d 1350, 1353-54 (Pa. 1984) (adopting Restatement (Second) of

Torts § 324A[1]).  This appears to be the same kind of claim lodged by the plaintiffs in

*Bradshaw* and *Collette* that, by enacting and maintaining policies prohibiting certain

kinds of off-campus conduct by students, an educational institution assumes a duty to any

third parties who suffer injury when such policies allegedly fail to prevent a student from

acting negligently or recklessly.  For the reasons outlined above, such a theory cannot

prevail in this case.

Accordingly, I find as a matter of law that UTI owed no duty to Colin Fitzpatrick

under the scenario pleaded here, even viewing all the factual allegations as true and

making all reasonable inferences.  The facts that UTI (1) maintained a policy

admonishing students to comply with state traffic laws and (2) was aware that some of its

students, including the driver in this case, violated state traffic laws do not give rise to a

legal duty.  In the original complaint, there were allegations that UTI "was aware for

some time that its students, including, but not limited to, Defague were using classroom

knowledge and UTI's facilities to modify their vehicles to perform at extreme speeds."

Compl. ¶ 10 (docket no. 10).  This allegation was the basis for my decision to deny

defendant's original motion to dismiss.  *See* Memorandum/Order of Aug. 14, 2008 at 5

---

[1]  "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

("should there be evidence that the university was or should have been aware that its facilities were being used by its students for improper modifications of student automobiles ... it is possible that a finding of liability would be consistent with Pennsylvania law.").  When plaintiff withdrew such allegations, Am. Compl. ¶ 1 (docket no. 33), and grounded her suit solely on the theory that UTI assumed a duty by enacting school policies against negligent or reckless conduct off-campus, Pl. Resp. at 4, she placed her claims in the realm of *Bradshaw* and *Collette*.  I do not perceive that Pennsylvania courts would support the imposition of a broad duty of public protection on colleges, universities, and training schools to monitor and prevent negligent or reckless off-campus conduct by their adult students, absent some additional evidence of a special relationship or other measure of institutional culpability.

B.    Plaintiff's request to amend

Plaintiff argues that "if UTI's motion is granted, it must be granted without prejudice so as to allow Mrs. Fitzpatrick the opportunity to amend her Complaint once more."  Plaintiff has not filed a formal motion to amend.  Fed. R. Civ. P. 15(a)(2) states that where leave to amend of right is no longer applicable, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  A district court has discretion in such circumstances to grant or deny leave, but that discretion is circumscribed by "the liberal pleading philosophy of the federal rules."  *Bjorgung v. Whitetail Resort LP*, 550 F.3d 263,

266 (3d Cir. 2009).

I find no reason to deny plaintiff's request.  Accordingly, while the amended complaint will be dismissed under Fed. R. Civ. P. 12(b)(6), I will dismiss it without prejudice and permit Mrs. Fitzpatrick another chance to frame her factual allegations and legal claims.

### III.  Conclusion

For the reasons stated above, defendant's Motion to Dismiss (docket no. 34) will be granted and plaintiff's amended complaint will be dismissed without prejudice.  An appropriate order accompanies this memorandum.