**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GALE FITZPATRICK and THE
ESTATE OF COLIN FITZPATRICK,
                    Plaintiffs,

    v.

UNIVERSAL TECHNICAL
INSTITUTE, INC.
                    Defendant.

Civil Action No. 08-1137

**MEMORANDUM**

August 11, 2010                                             Pollak, J.

      In this diversity suit, defendant Universal Technical Institute ("UTI"),which runs technical training schools throughout the country, has filed a motion to dismiss (docket no. 46) the second amended complaint (docket no. 43) of plaintiff Gale Fitzpatrick, the mother of the decedent Colin Fitzpatrick, and the Estate of Colin Fitzpatrick. Plaintiffs have responded (docket no. 47). UTI has filed a reply to plaintiffs' response (docket no. 50).

**I. Background and Procedural History**

      The relevant facts of this case are as alleged in the second amended complaint. Plaintiff Gale Fitzpatrick is the mother of Colin Fitzpatrick ("Fitzpatrick"), and serves as

1

administratrix of his estate, which is also a plaintiff. Second Am. Compl. ¶¶ 2-3. On

January 30, 2006 Fitzpatrick was driving home on Route 202 when Jean DeFague's

("DeFague") car struck his car and killed him. *Id.* at ¶¶ 10-13. At the time of the

accident DeFague was a student at UTI's Exton, Pennsylvania campus. Mot. Dismiss

Pl.'s Second Am. Compl. ¶ 8. The accident occurred approximately 12.7 miles from the

campus. *Id.* DeFague was not driving on school business or in a UTI-provided vehicle.

*Id.* at ¶¶ 9-10.

UTI training schools teach students automotive maintenance and repair. Plaintiffs

allege that UTI students, including DeFague, drove their cars recklessly at high speeds in

the surrounding areas. Second Am. Compl. ¶ 14. Plaintiffs further allege that UTI was

aware of its students' conduct because it had received complaints from a local business

and the Chief of Police of Upper Uwchlan Township. *Id.* at ¶¶ 14-16. Furthermore,

newspapers reported students' reckless conduct. *Id.* at ¶ 18. As a result of its students

reckless driving, UTI took steps to control the students' behavior. *Id.* at ¶ 19. The school

sought community input and, in a memorandum, advised the student body that a police

citation of speeding or reckless driving would result in immediate suspension or

termination. *Id.* at ¶ 21. It also advised that identification of reckless driving by a staff or

community member would lead to disciplinary action, including possible termination

from the school. *Id.* UTI also: (1) added a security guard to identify reckless drivers; (2)

required all students to sign a waiver stating that police would inform UTI of all student

2

run-ins; and (3) updated its Student Success Guide, a school handbook for incoming students providing useful information and school policies, to include disciplinary actions for reckless driving. *Id.* at ¶¶ 22, 25-27.

DeFague had a history of driving violations, including two speeding citations in 2005. *Id.* at ¶¶ 35-36. Plaintiffs contend that, in spite of its policies to curb reckless driving through disciplinary action, UTI was aware of DeFague's driving record and failed to punish or expel him. *Id.* at ¶ 38. Plaintiffs further allege that UTI assumed a duty of care to the community because of its disciplinary policies and public statements surrounding these policies. *Id.* at ¶ 46.

Plaintiffs filed a complaint in the Chester County Court of Common Pleas seeking damages from UTI for negligence, wrongful death, and survival. Invoking this court's diversity jurisdiction, UTI removed the suit to this court (docket no. 1). After removal, UTI filed a motion to dismiss (docket no. 12) asserting that plaintiffs could not establish that UTI owed Fitzpatrick a duty of care. In a memorandum of August 18, 2008, I denied the motion (docket no. 21) because the initial complaint alleged that UTI was aware that its students, including DeFague, used its classrooms and the material it taught to modify their cars so that they could drive at a faster speed. Plaintiffs filed an amended complaint (docket no. 33) and UTI filed a motion to dismiss (docket no. 34) which I granted. *Id.* at *13. The dismissal was without prejudice to plaintiffs' ability to further amend the complaint. *Id.* Plaintiffs then filed a second amended complaint (docket no. 43) and UTI

3

filed the instant motion.

## II. Analysis

A.    <u>Rule 12 (b)(6) Motion to Dismiss Standard</u>

Defendant moves the court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim a claim to relief that is plausible on its face." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (internal quotations omitted). In reviewing this motion to dismiss, the court must accept as true all factual allegations in the complaint and draw from it all reasonable inferences, construed in the light most favorable to the plaintiffs. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

UTI contends that, based upon the current pleadings, plaintiffs cannot establish that UTI was under any obligation to control the activities of its students or that it assumed a duty of care to the community, or to Fitzpatrick, because of its public disciplinary policies. Plaintiffs respond that, "by its affirmative actions, UTI assumed a duty to protect the public, and the public relied to its detriment. . . . [U]TI failed to use reasonable care in administering the duty it had affirmatively undertaken, thereby causing its students' dangerous driving to persist and the death of Colin Fitzpatrick." Pl.s' Resp. at 7. UTI responds that, "[p]laintiff[s'] argument appears to be merely an attempt to

distract the Court from the principal issue presented by UTI's motion–does a school have custody or control over an adult student driving more than twelve (12) miles from campus and unrelated to any school function so as to create a duty of care?" Defendant's Resp. at 2-3. UTI continues, "Plaintiff[s] argues instead that UTI 'assumed a duty of care.' . . . [h]owever, this Court previously addressed and rejected Plaintiff's 'assumption of care' argument." *Id.* at 3.

Under Pennsylvania law, the primary element in a negligence cause of action is whether the defendant owed the plaintiffs a duty of care. *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) (citation omitted). A duty of care can be established in a liability suit, by, *inter alia*: (1) a special relationship between the parties, or (2) an assumption of a duty to care. *See Bradshaw v. Rawlings*, 612 F.2d 135, 140-41 (3d Cir. 1979) (analyzing a college's liability in an off-campus car crash between two students, one who was underage and intoxicated against school policies, through a special relationship and an assumption of a duty to care perspective).

B.     Enrollment in an Institution of Higher Education does not Create a Special Relationship Between a Student and the School

The general rule in Pennsylvania, regarding the relationship between a college and its students, is that no special relationship exists. *See Bradshaw*, 612 F.2d at 140.. The Third Circuit first held in *Bradshaw* that, "[c]ollege administrators no longer control the broad arena of general morals. . . . [t]oday students vigorously claim the right to define and regulate their own lives." *Bradshaw*, 612 F.2d at 140. *Bradshaw*, like the present

case, involved an injury off-campus caused by students allegedly engaged in an activity illegal under Pennsylvania law and prohibited by the school.  The court found that because the students' conduct off campus was unforeseeable, the school could not control it.  *Id.* at 141.

Since *Bradshaw* there has been a long line of cases reaffirming that institutions of higher education are not responsible for their students' off-campus conduct while acting as private individuals.  Such an understanding has particular force with respect to vocational or professional schools, where the students are, as a general matter, under relatively little supervision.  *See Fitzpatrick*, 2009 U.S. Dist. LEXIS 71426, at *9; *Milliard v. Osborne*, 611 A.2d 715, 721 (Pa. Super. Ct. 1992) (finding that it would be inappropriate to impose upon a college a custodial relationship with its students as it cannot control their behavior through school policies).

## C.    An Institution of Higher Education does not Assume a Duty of Care to Students or Third Parties when it Creates School Policies Which Benefit the Public

Plaintiffs' second amended complaint asserts that "UTI assumed a duty of care by taking affirmative steps to protect the community against the conduct of its students by, in part, promulgating policies designed to curb such conduct, and by publicly announcing that it would enforce those policies to protect the public."  Second Am. Compl. ¶ 46. Pennsylvania has adopted the Restatement (Second) of Torts § 324A.  *See Cantwell v. Allegheny Cnty*, 483 A.2d 1350, 1353 (Pa. 1984) ("Although this Court has never had occasion to consider § 324A of the Restatement, the essential provisions of this section

have been the law in Pennsylvania for many years.").  Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to
> another which he should recognize as necessary for the protection of a third
> person or his things, is subject to liability to the third person for physical
> harm resulting from his failure to exercise reasonable care to protect his
> undertaking, if (a) his failure to exercise reasonable care increases the risk
> of such harm, or (b) he has undertaken to perform a duty owed by the other
> to the third person, or (c) the harm is suffered because of reliance of the
> other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).  Plaintiffs contend that the public relied

upon UTI's statements that it would enforce its policies, which it failed to do through

disciplinary action.  Second Am. Compl. ¶¶47-48.

UTI did not assume a duty of care to the public through its school policies aimed at

preventing reckless driving. As I noted in ruling on plaintiffs' first amended complaint:

> This appears to be the same kind of claim lodged by plaintiffs in *Bradshaw*
> and *Collette* [*v. Tolleson Unified School District, No. 214*, 54 P.3d 828, 836
> (Ariz. Ct. App. 2002)], that, by enacting and maintaining policies
> prohibiting certain kinds of off-campus conduct by students, an educational
> institution assumes a duty to any third parties who suffer injury when such
> policies allegedly fail to prevent a student from acting negligently or
> recklessly.  For the reasons outlined above, such a theory cannot prevail in
> this case.

*Fitzpatrick*, 2009 U.S. Dist. LEXIS 71426, at *10-11.  Plaintiffs assert that UTI breached

a duty of care because:  (1) the public relied on UTI's policies which it promoted

throughout the community, and (2) UTI failed to enforce these policies.

Assuming that members of the public actually relied upon UTI's policies, the

Institute is still not liable to plaintiffs.  Creation of school policies that punish individuals

for conduct made illegal under state law does not place an institution of higher education in a position of assuming a duty of care. *See Bradshaw*, 612 F.2d at 140 (finding that the college's regulation prohibiting underage drinking did not place the college in a custodial relationship with its students or indicate that it had voluntarily assumed such a relationship, and therefore the college was not liable for the injuries suffered by a student after he was hit by an underage peer who had been drinking at an off-campus class picnic); *see also Booker v. Lehigh Univ.*, 800 F. Supp. 234, 240 (E.D. Pa. 1992) ("[E]ven if Lehigh knowingly failed to prevent alcohol consumption, we could not, nor would we, find a duty *in loco parentis*.").

As a matter of law UTI did not assume a duty of care to the public by establishing and implementing policies to curb reckless driving. UTI cannot be held liable for a student's reckless driving 12.7 miles from the campus in a vehicle not belonging to the Institute.

C.    <u>Derivative Claims</u>

Plaintiff Gale Fitzpatrick asserts a claim to recover damages for the death of her son under the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. § 8301. Second Am. Compl. ¶ 52. As this claim is premised upon UTI's negligence it fails as a matter of law. *See Kagan v. Harley Davidson, Inc.*, No. 07-0694 2008 U.S. Dist. LEXIS 32747, at *2 n.1 (E.D. Pa. Apr. 22, 2008) (finding that plaintiff's wrongful death claim was derivative of its negligence claim and would only survive summary judgment if the negligence claim

did).

Gale Fitzpatrick further asserts a claim for damages pursuant to the Pennsylvania Survival Act, 42 Pa. Cons. Stat. § 8302. Second Am. Compl. ¶¶ 57-59. This claim similarly fails as a matter of law because it is premised upon UTI's negligence.

## III. Conclusion

For the reasons stated above, defendant's Motion to Dismiss will be granted. As plaintiffs, despite the opportunity to amend for a second time, have been unable to state a claim on which relief can be granted, an attempt to frame a third amended complaint would be futile. *See Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ("We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."). Accordingly, dismissal of plaintiffs' second amended complaint will be with prejudice. An appropriate order accompanies this memorandum.